ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VII

| | | |
|---|---|---|
| RICARDO D. FONTANET SÁNCHEZ **RECURRENTE** v. OFICINA DE GERENCIA DE PERMISOS **RECURRIDA** | KLRA202300505 | Revisión administrativa procedente del Departamento de Desarrollo Económico y Comercio, Oficina de Gerencia de Permisos Caso Núm. 2021-399890-CCO-011171 Sobre: SOLICITUD DE VARIACIÓN DE CONSTRUCCIÓN |

Panel integrado por su presidenta, la Jueza Domínguez Irizarry, la Jueza Grana Martínez y el Juez Pérez Ocasio.

Grana Martínez, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 27 de noviembre de 2023.

El recurrente, Ricardo D. Fontanet Sánchez, solicita que revisemos la resolución en la que la Oficina de Gerencia de Permisos no autorizó una consulta de construcción.

La recurrida, Oficina de Gerencia de Permisos (OGPe), presentó su alegato en oposición al recurso.

Los hechos esenciales para comprender la determinación que hoy tomamos se incluyen a continuación.

**I.**

El 22 de noviembre de 2022, el recurrente presentó en la Oficina de Gerencia de Permisos una solicitud de consulta para la construcción de una vivienda. Surge del expediente ante nuestra consideración que, aunque originalmente pidió autorización para la construcción de una vivienda de tres plantas, posteriormente, durante el proceso de permiso, alegó que la tercera planta era un espacio abierto o una terraza. La propiedad está localizada en la

Número Identificador

SEN2023_____

Ctra. PR-429, Km 0.7 interior del Barrio Calvache del Municipio de Rincón. La finca ubica en un distrito calificado como Residencial Comercial (RC), según el Mapa de Calificación de Suelos de ese Municipio y tiene una cabida de 1,183.50 metros cuadrados. El Departamento de Recursos Naturales y Ambientales emitió una Certificación de la Zona Marítimo Terrestre en el caso O-AG-CER02-AG-00020-30092019 sobre la propiedad. Véase, Resolución de 28 de agosto de 2023, determinaciones de hecho 1-5, Anejo 2, págs. 1-2 del apéndice el recurso.

El recurrente pidió una variación al cumplimiento de la Sección 6.4.2.3(c) del Reglamento Conjunto de 2020, que prohíbe la construcción de viviendas en solares frente a la costa dentro de 30 metros desde la Zona Marítimo Terrestre. La Solicitud de Consulta de Construcción estuvo acompañada del Memorial Explicativo del ingeniero Carlos E. Bassat Rivera cuya solicitud de variación obedeció a que:

> La sección 6.4.2.3 prohíbe la construcción de vivienda en solares frente a la costa dentro de una distancia de 30 metros medidos desde la ZMT. En nuestro caso el solar tiene aprobado por el DRNA una certificación de la ZMT que no permite construir vivienda dentro de 20 metros medidos de la ZMT. Esto nos deja en el solar 13.20 metros de profundidad para la construcción de vivienda. La imposición de este requisito de 30 metros, según sección 6.4.2.8 y sección 6.4.2.3.c nos dejaría el solar solamente con 3.20 metros de profundidad. Como vemos en la ilustración, el solar en cuestión tiene aproximadamente 13.2 metros de profundidad. Al aplicarle esta regla lo convierte en un solar de 3.2 metros libres para construcción. El solar se reduce de 1,186.53 metros cuadrados, según escrituras, a 291.91 mc luego de la aplicación de los límites de la ZMT. Ahora con esta imposición adicional de 30 metros el solar se reduce a 69.95 mc. Claramente la aplicación literal de esta sección resulta en una prohibición o restricción irrazonable del disfrute de la pertenencia de la propiedad en cuestión. Es relevante mencionar el cumplimiento de la ubicación de la propuesta vivienda con la certificación de la zona marítimo terrestre, dónde se cumplirá con la distancia de la zona de deslinde de 6 metros, en adición a los 20 metros de la zona de vigilancia. Entendemos que la otorgación de esta variación aliviará un perjuicio para la construcción de una vivienda viable y así poder utilizar el solar a su máximo, cumpliendo con los ya estrictos requisitos de

> la ZMT. Esta variación no resultaría en aumento en los niveles, ni velocidades de las aguas de inundación, ni tal concesión representaría un peligro potencial o inminente a la seguridad y salud pública. La aplicación de este requisito de la sección 6.4.2.8 y la sección 6.4.2.3c, equivaldría a una confiscación de la propiedad de origen de 1,186.5283 metros cuadrados para convertirla a una de menos de 70 metros cuadrados, lo cual la convierte en inutilizable.

Véase, págs. 36-37 del apéndice del recurso.

Según consta en el Memorial Explicativo, el recurrente pidió una variación en el patio delantero de tres metros a un metro. El recurrente adujo que esa variación no ocasionaría ningún impacto, porque la propiedad tendría un patio posterior de 4 metros más 20 mts., hacia la zona marítimo terrestre. Por último, solicitó la aplicación de la exención establecida en la sección 6.4.2.8 b (1) al cumplimiento del retiro de edificios o estructuras de la zona marítimo terrestre. Esta exención aplica a solares, cuya formación y calificación urbana fue autorizada por la Junta de Planificación, antes de la vigencia del Reglamento Conjunto 2020 y en los cuales el retiro requerido impide el uso permitido en la zonificación. Según el recurrente, esta finca fue mensurada y aprobada inicialmente el 29 de agosto de 2019, antes de la vigencia del Reglamento Conjunto 2020. Véase, pág. 38 del apéndice del recuso.

El 24 de febrero de 2023, la agencia requirió al recurrente que aclarara si la construcción era de dos o de tres niveles. El 4 de marzo de 2023, el recurrente informó que la construcción sería de una vivienda de dos plantas y que la tercera planta era la azotea.

El 22 de mayo de 2023, la Oficina de Gerencia no favoreció la consulta por las razones siguientes: (1) el proyecto presentó variaciones que no fueron solicitadas, ni justificadas como un muro dentro de la faja de terreno de 20 metros que debe ser dedicada a uso público, (2) se proponen variaciones intensas a la zona marítima terrestre en violación a la sección 6.4.2.2 del Reglamento Conjunto, cuyo propósito es controlar el desarrollo de terrenos en la zona

costera, (3) la proponente no demostró que las variaciones no afectarán adversamente el disfrute y valor de las pertenencias cercanas, ni el ambiente del vecindario, entre otras consideraciones y (4) no evidenció que la variación aliviará un prejuicio claramente demostrado. (Regla 6.3.2 del Reglamento Conjunto).

El recurrente presentó una solicitud de revisión administrativa. La División de Revisión Administrativa acogió la solicitud y realizó una vista. Según consta en la resolución recurrida, el ingeniero Carlos E. Bassat Rivera declaró lo siguiente. Fue contratado por el recurrente para solicitar el permiso de construcción y una variación a la sección 6.4.2.2 del Reglamento Conjunto. La construcción es de dos plantas y se solicita una variación en el patio delantero. El patio requerido es de tres metros y el propuesto es de un metro. Además, solicita una variación de la separación de treinta (30) metros requerida en solares frente a la costa. El propuesto es de veinte (20) metros y cuatro (4) metros adicionales de patio para un total de veinticuatro metros. La solicitud está en armonía con otras propiedades del área. El estudio de sombras evidenció el cumplimiento de la Sección 6.4.2.8 del Reglamento Conjunto, porque la construcción no incide sobre la zona marítimo terrestre. No obstante, también se configuran las excepciones al cumplimiento de la sección 6.4.2.8. La construcción cumple con el plan de erosión la Ley de Política Ambiental. El área será forestada. El disfrute de los vecinos no se afectará porque la propiedad más cercana ubica a 250 metros. Véase, Resolución de 28 de agosto de 2023, págs. 8-9.

Durante el contrainterrogatorio, el ingeniero Bassat Rivera: (1) reconoció que el patio posterior propuesto de cuatro metros está dentro de los 30 metros de la zona marítimo terrestre, y (2) declaró que la separación de 20 metros requerida es contigua a los 30

metros y no significa que la recurrente tenga que dejar cincuenta metros. Véase, Resolución de 28 de agosto de 2023, pág. 10.

El interventor, Jaime Barea Fernández, declaró que se oponía al proyecto porque se estaba construyendo un muro en la zona marítimo terrestre que tendría un efecto sobre las tortugas marinas. Además, expresó oposición al deslinde porque es del año 2019 y el área ha cambiado. Por último, declaró que la Junta de Planificación le ordenó al colindante del recurrente que destruyera un muro por daño a la playa. *Íd.*

El foro recurrido denegó la revisión, por los fundamentos siguientes. El proyecto propuesto contempla la construcción de una estructura permanente dentro de los treinta metros de la zona marítimo terrestre y en contra de lo establecido en la Sección 6.4.2.2 inciso a. La faja de 30 metros es contigua a la faja de 20 metros de ancho paralela de uso público. La alegación de la recurrente de que los 20 y 30 metros no se suman, no es correcta. Por ser contiguos, son uno al lado del otro, lo que significa paralelos. Cualquier otra interpretación haría inoficioso el requerimiento de veinte metros de uso público. El muro de hormigón propuesto estaría dentro de esos veinte metros. El proyecto no cumple con los 20 metros desde la zona marítima terrestre, ni con la prohibición de construir estructuras permanentes dentro de la faja de treinta metros. Las variaciones en construcción aplican a distritos. El capítulo 6.4 aplica a la Zona Costera y de Acceso a las Playas y Costas de Puerto Rico.

El recurrente presentó este recurso en el que alega que:

ERRÓ LA OFICINA DE GERENCIA DE PERMISOS Y SU DIVISIÓN DE REVISIONES ADMINISTRATIVAS AL DETERMINAR QUE LA PARTE RECURRENTE NO PRESENTÓ EVIDENCIA QUE DEMUESTRE QUE LA OGPR ACTUÓ ERRADAMENTE AL DENEGAR LA SOLICITUD DE CONSULTA DE CONSTRUCCIÓN CON VARIACIONES EN PARÁMETROS DE CONSTRUCCIÓN ALEGANDO QUE NO SE ESTABLECIÓ CÓMO LA MAGNITUD DE LAS VARIACIONES SOLICITADAS

REPRESENTAN UN MODO EFECTIVO QUE GARANTICE SEGURIDAD Y QUE EL NO PERMITIR LA VARIACIÓN TAN INTENSA REPRESENTA UNA CONFISCACIÓN DEL PREDIO SIN DISCUTIR Y EVALUAR LAS MISMAS.

**II.**

**Deferencia a las resoluciones administrativas**

Las determinaciones de las agencias administrativas están sujetas a la revisión judicial del Tribunal de Apelaciones. 4 LPRA sec. 24y. La Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico autoriza expresamente la revisión de las decisiones, órdenes y resoluciones finales de los organismos administrativos. 3 LPRA sec. 9672.

Ahora bien, la revisión judicial de las determinaciones de hechos de las decisiones de las agencias será sostenida por el tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo. 3 LPRA sec. 9675. El examen jurídico de las determinaciones administrativas se circunscribe a determinar si las agencias han actuado en forma arbitraria, caprichosa, ilegal o tan irrazonablemente que constituya un abuso de discreción. Al evaluar, los tribunales revisores hemos de otorgar deferencia a las decisiones de administrativas, pues estos organismos gubernamentales gozan de experiencia y conocimiento especializado sobre los asuntos ante su consideración, lo cual ampara sus dictámenes con una presunción de legalidad y corrección. *OEG v. Martínez Giraud*, 210 DPR 79, 88-89 (2022); *Moreno Lorenzo v. Departamento de la Familia*, 207 DPR 833, 839 (2021); *Capó Cruz v. Junta de Planificación*, 204 DPR 581, 591 (2020); *Municipio de San Juan v. CRIM*, 178 DPR 163, 175 (2010). En fin, los dictámenes de las agencias gozan de una presunción de legalidad y corrección que subsiste mientras no se produzca suficiente prueba para derrotarla. *OEG v. Martínez Giraud,* supra, pág. 88-89; *Rebollo v Yiyi Motors*,

161 DPR 69, 77 (2004); *Misión Ind. P.R. v. J.P.*, 146 DPR 64, 130 (1998).

La parte que impugna judicialmente las determinaciones de hechos de una agencia tiene el peso de demostrar que no están basadas en el expediente o que las conclusiones del foro administrativo son irrazonables. La razonabilidad es el criterio rector al momento de pasar juicio sobre la decisión de una agencia. *OEG v. Martínez Giraud,* supra, pág. 90*; Otero v. Toyota,* 163 DPR 716, 727 (2005); *González Segarra et al. v. CFSE,* 188 DPR 252, 276–278 (2013); *OCS v. Universal,* 187 DPR 164, 178–179 (2012).

La evidencia sustancial que surge de la totalidad del expediente y en la que debe estar basada la determinación administrativa, ha sido definida jurisprudencialmente como aquella que es relevante y que una mente razonable podría aceptar como adecuada para sostener una conclusión. Ahora bien, ha de quedar claro que la deferencia no implica que la evidencia sustancial este sostenida por un ligero destello de evidencia o por simples inferencias. De manera que el crisol evaluativo de las determinaciones administrativas siempre estará guiado por el concepto de razonabilidad conforme la evaluación del expediente administrativo en su totalidad. *OEG v. Martínez Giraud, supra,* pág. 89. Amparados en la deferencia y razonabilidad, los tribunales analizarán las determinaciones de hechos de los organismos administrativos. *González Segarra et al. v. CFSE,* supra, pág. 276.

En cuanto a las determinaciones de derecho de las agencias son revisables en todos sus aspectos. 3 LPRA 9675. La revisión se ciñe a determinar si: (1) el remedio concedido por la agencia fue el apropiado, (2) las determinaciones de hecho de la agencia están basadas en evidencia sustancial que obra en el expediente administrativo y (3) las conclusiones de derecho fueron correctas. El respeto a la resolución administrativa se sostiene hasta que no se

presente evidencia suficiente para derrotar la presunción de legalidad. *OEG v. Martínez Giraud,* supra, pág. 89.

La deferencia a la interpretación que las agencias hacen sobre las leyes que le corresponde poner en vigor, cede cuando: 1) erró al aplicar la ley, 2) actuó arbitraria, irrazonable o ilegalmente o 3) lesionó derechos constitutivos fundamentales. El criterio administrativo no prevalece, cuando la interpretación estatutaria que realiza la agencia provoca un resultado incompatible o contrario al propósito para el cual se aprobó la legislación y con la política pública promovida. Es decir, la deferencia cede ante una determinación que resulte irrazonable, ilegal o que conduzca a la comisión de una injusticia. *OEG v. Martínez Giraud,* supra, pág. 90-91. Por ello, los tribunales tienen que armonizar, siempre que sea posible, todos los estatutos y reglamentos administrativos involucrados para la solución justa de la controversia, de modo que se obtenga un resultado sensato, lógico y razonable. *Moreno Lorenzo v. Departamento de la Familia,* 207 DPR 833, 843 (2021).

La transcripción de la vista o una exposición narrativa de la prueba son imprescindibles cuando se cuestiona la apreciación de la prueba y adjudicación de credibilidad de un organismo administrativo. Los tribunales no deben intervenir con la apreciación de la prueba oral y adjudicación de credibilidad del foro administrativo, si no tiene forma de evaluarlo. *Graciani Rodríguez v. Garage Isla Verde,* 202 DPR 117, 128-130 (2019).

**Ley Núm. 161-2009, 23 LPRA sec. 9011 *et seq.*, conocida como la Ley de Reforma de Permisos de Puerto Rico**

La Ley Núm. 161-2009, Ley para la Reforma del Proceso de Permisos de Puerto Rico, 23 LPRA sec. 9011 *et seq.,* establece el marco legal y administrativo que rige la solicitud, evaluación, concesión y denegación de permisos por el Gobierno de Puerto Rico. El estatuto creó la Oficina de Gerencia de Permisos como el

organismo administrativo encargado de evaluar, aprobar o denegar las solicitudes ante su consideración. Exposición de Motivos de la Ley Núm. 161, *supra.* Dicha oficina emitirá las determinaciones finales de permisos, según lo dispuesto en el Reglamento Conjunto de Permisos. Los Municipios Autónomos con Jerarquía de la I a la V, conforme a lo establecido en el Art. 1.3 y 18.10 de la ley, también podrán emitir determinaciones finales y permisos. Art. 2.5 de la Ley Núm. 161, *supra,* 23 LPRA 9012(d). Por su parte, el Art. 9.10, 23 LPRA sec. 9019 (i), establece la presunción de corrección y legalidad de las determinaciones finales y permisos expedidos por la OGPe, los Municipios Autónomos con Jerarquía de I a V y por los profesionales autorizados. No obstante, serán revocados cuando medie fraude, dolo, engaño, extorsión, soborno o la comisión de algún otro delito en el otorgamiento o denegación de la determinación final o del permiso. Igualmente serán revocados, cuando la estructura represente un riesgo a la salud, seguridad o las condiciones ambientales o arqueológicas.

Nuestro ordenamiento jurídico diferencia el permiso discrecional del ministerial. El Art. 1.5, inciso 26, define discrecional de la siguiente manera:

> 26) "Discrecional"— Describe una determinación que conlleva juicio subjetivo por parte de la Junta Adjudicativa, del Secretario Auxiliar o un Municipio Autónomo con Jerarquía de la I a la V sobre la forma en que se conduce o propone una actividad o acción. Éstos utilizan su conocimiento especializado, discreción y juicio para llegar a su determinación, ya que esta determinación considera otros asuntos además del uso de estándares fijos o medidas objetivas. El Secretario Auxiliar o el Municipio Autónomo con Jerarquía de la I a la V, puede utilizar juicios subjetivos discrecionales al decidir si una actividad debe ser realizada o cómo debe realizarse. 23 LPRA sec. 9011 (26).

Por su parte, el Art. 6.3 (a) de la Ley Núm. 161, *supra,* 23 LPRA sec. 9016 (g)(a), confiere a la Junta Adjudicativa la potestad de evaluar y adjudicar solicitudes discrecionales.

Según la Ley Núm. 161, *supra,* la variación en construcción es la:

Autorización concedida por el Secretario Auxiliar para la construcción de una estructura o parte de ésta, que no satisfaga los reglamentos, Planes de Ordenación y códigos establecidos, en cuanto a parámetros de construcción y densidad poblacional, pero que, debido a la condición del solar, la ubicación especial o el uso particular, confronte una dificultad práctica que amerite por excepción una consideración especial, siempre que no exista perjuicio a las propiedades vecinas. Se podrá conceder una variación en los parámetros de construcción, que nunca podrá conllevar un cambio en densidad e intensidad, tampoco se considerará una recalificación. La misma es permisible siempre y cuando el uso propuesto sea compatible con el contemplado en el tipo de distrito donde ubica y cumpla con los requisitos aplicables a este tipo de variación. Art 1.5 (94) de la Ley Núm. 161 *supra,* 23 LPRA sec. 901 (94).

Las variaciones de uso son una válvula de escape dentro del rígido ordenamiento de zonificación vigente en nuestra jurisdicción. Nos permiten atenuar el rigor reglamentario, porque alivian las restricciones que regulan el disfrute de determinada propiedad, cuando se demuestra que la aplicación de la reglamentación vigente es irrazonable y ocasiona perjuicios a su propietario. No obstante, las variaciones no se favorecen dado su carácter excepcional y solo deben concederse cuando están claramente justificadas y proceden conforme a las leyes y reglamentos aplicables. Su uso inapropiado y discriminatorio podría destruir todo nuestro esquema de zonificación y cambiar eventualmente las características de un distrito planificado originalmente con una infraestructura para ciertos usos. *Empresas Ferrer v. ARPe,* 172 DPR 254, 266-267 (2007).

La Junta de Planificación en colaboración con la Oficina de Gerencia de Permisos y las entidades gubernamentales concernidas son responsables de preparar y adoptar un Reglamento Conjunto para ejecutar los propósitos de la Ley Núm. 161, *supra.* Art. 15.1 de la Ley Núm. 161, *supra,* 23 LPRA sec. 9025.

**REGLAMENTO CONJUNTO 2020**

El Reglamento Conjunto 2020 fue declarado nulo por el Tribunal Supremo en una Opinión *Per Curiam* el 16 de junio de 2023. No obstante, la determinación de nulidad es prospectiva a la certificación de esa opinión. *Martínez Fernández et al. v. OGP,* 2023 TSPR 75, 212 DPR ___ (2023).

Las consultas son proyectos discrecionales. Sección 2.2.3.1 del Reglamento Conjunto 2020. Véase, pág. 44 del Reglamento Conjunto. Los proyectos en los que se propone la construcción de una estructura que no cumple con los requisitos del Reglamento Conjunto o el Código de Construcción adoptado por la Oficina de Gerencia de Permisos en cuanto a parámetros de construcción y que debido a la condición del solar, su ubicación especial o su uso particular, confrontan una dificultad práctica y ameritan una consideración especial, siempre que no se cree un perjuicio a las propiedades vecinas, requieren la presentación de una consulta de ubicación. Sección 2.2.3.2 (g). Véase, pág. 45 del Reglamento Conjunto.

La Sección 2.2.3.3 contiene los criterios generales de evaluación de una consulta y lee como sigue:

> La determinación que se tome sobre un proyecto propuesto bajo las disposiciones de esta Sección descansará en la evaluación de factores que presente y demuestre la parte interesada en el caso, pero sin limitarse a, los siguientes factores:
> a. El proyecto deberá estar conforme con el Plan de Usos de Terrenos de Puerto Rico o el Plan de Ordenación Territorial Principio Rectores, Metas y Objetivos establecidos en el *Plan de Usos de Terrenos de Puerto Rico* aplicables a municipios que no cuenten con un Plan Territorial aprobado.
> b. Que exista o se pueda proveer la infraestructura necesaria para atender las necesidades del proyecto propuesto y para mitigar sus efectos directos e indirectos.
> c. La viabilidad, aceptabilidad y conveniencia del uso propuesto.
> d. La cabida del predio deberá exceder el máximo permitido para un cambio de calificación directo.

e. Cómo se atienden las necesidades de la comunidad donde ubica el proyecto propuesto y cómo el mismo responde al interés público.

Véase, pág. 45 del Reglamento Conjunto.

Las solicitudes discrecionales tienen que estar acompañadas de un memorial explicativo con la información enumerada, pero sin limitarse a esta. Sección 2.2.2.5 del Reglamento Conjunto 2020, pág. 43.

La Regla 6.3.2 trata sobre las Variaciones y en ella se dispone lo siguiente:

SECCION 6.3.2.1 DISPOSICIÓN GENERAL

a. La variación en construcción, lotificación u otras no van dirigidas a alterar el uso permitido en el distrito, sino a dispensar al propietario del cumplimiento de uno o más de los requisitos que establece el Reglamento Conjunto, para la zona o distrito de calificación donde ubica o radica el inmueble o propiedad.

b. La parte interesada que solicita una variación según antes señalado, al contrario de aquel que invoca la variación en uso, desea seguir utilizando la propiedad para el uso permitido por la reglamentación, pero necesita que se le exima de uno de los requisitos establecidos en el distrito de calificación para asegurar la viabilidad del uso permitido.

c. Esta disposición reglamentaria aplicará de igual manera en las Áreas de Planificación Especial alrededor de Puerto Rico.

SECCIÓN 6.3.2.2          INICIATIVA

Toda variación deberá ser solicitada por escrito por el dueño o un representante autorizado del dueño de la propiedad para la cual solicita la misma; señalando los motivos, fundamentos y razones en apoyo de su solicitud.

SECCIÓN 6.3.2.3 CONDICIONES AL OTORGAR VARIACIONES

a. El Secretario Auxiliar de la OGPe, los Municipios Autónomos con Jerarquía de la I a la III, a los cuales se le haya delegado dicha facultad por medio del Convenio de Transferencia, autorizará variación en construcción, lotificación u otras para los usos que tolera el distrito tomando en consideración, entre otros, los siguientes factores:

1. El solar tenga una condición particular que no permite que se cumpla con las disposiciones de este Reglamento.

2. El solar tenga una ubicación especial o el uso particular confronta una dificultad práctica y amerita una consideración especial.
3. La variación solicitada no perjudica propiedades vecinas, la disponibilidad de infraestructura y el ambiente del vecindario.
4. No se afecte el uso agrícola, la productividad agrícola de los terrenos, los recursos naturales, históricos o culturales existentes, si alguno.
5. Para variar los parámetros de construcción sobre densidad e intensidad, el uso propuesto deberá ser uno contemplado en el distrito en que ubica.
6. La magnitud de la variación es la necesaria para asegurar la viabilidad del uso permitido y no es viable considerar otras alternativas para salvar el problema presentado.

...

SECCIÓN 6.3.2.4 CRITERIOS PARA AUTORIZAR VARIACIONES

No podrá autorizarse una variación en construcción, lotificación u otras, en todo o en parte, a menos que:
a. Que la variación sea necesaria para la preservación y el disfrute de un derecho de propiedad y se demuestre que la variación aliviará un prejuicio claramente demostrable.
b. Que la autorización de tal variación no afectará adversamente el disfrute y valor de las pertenencias cercanas en el uso presente y para cualquier otro uso futuro permitido.
c. Que el peticionario, a su vez, está en disposición de aceptar las condiciones y requisitos adicionales a los requisitos reglamentarios que el Secretario Auxiliar de la OGPe o Municipio Autónomo con Jerarquía de la I a la III le imponga para beneficio o protección del interés público.
d. Solicitar comentarios a la Unidad de Hidrogeología de la JP en áreas propensas a inundaciones o a deslizamientos de terrenos.
e. No afecte la integridad ecológica de la Reserva Agrícola, Natural, Áreas de Planificación Especial o se ocasione peligro a los recursos naturales, históricos, culturales o agrícolas existentes.

Véase, págs. 474-476 del Reglamento Conjunto 2020.

El Capítulo 6.4 del Reglamento Conjunto 2020 contiene las Disposiciones para la Zona Costera y de Accesos a Las Playas y Costas de Puerto Rico.

REGLA 6.4.1 DISPOSICIONES GENERALES

SECCIÓN 6.4.1.1 PROPÓSITO

a. Este Capítulo tiene el propósito de guiar y controlar el uso y desarrollo de terrenos y cuerpos de agua en la zona costanera de Puerto Rico, sus costas, playas y para requerir, fomentar o prohibir, basado en el bienestar general, los accesos a las playas de Puerto Rico.

b. Se tomará en consideración las disposiciones contenidas en la Ley 33-2019, conocida como la "Ley de Mitigación, Adaptación y Resiliencia al Cambio Climático de Puerto Rico".

SECCIÓN 6.4.1.2 APLICACIÓN

Las disposiciones contenidas en este Capítulo aplicarán y cubrirán a:

a. Toda construcción, reconstrucción, demolición o alteración de edificios, segregaciones de terrenos, desarrollo, urbanizaciones y cualquier otro proyecto que se proponga dentro de la Zona Costanera de Puerto Rico y de las islas adyacentes dentro de su jurisdicción.

b. Toda transacción de terrenos públicos o mejora pública dentro de la Zona Costanera de Puerto Rico, a ser realizada por algún funcionario u organismo del Gobierno de Puerto Rico.

c. Todos los terrenos dentro de la Zona Costanera, incluyendo los terrenos sumergidos y bajo aguas navegables colindantes con la Isla de Puerto Rico y las otras islas adyacentes dentro de su jurisdicción, cuando se determine que es necesario para la implementación de este Reglamento.

d. Toda persona natural o jurídica, pública o privada y cualquier agrupación de ellas.

La Sección 6.4.2.2 sobre OTRAS CONSIDERACIONES dispone lo siguiente:

a. Zona de Separación: Todo proyecto para la construcción de edificios, de segregación o de urbanización de terrenos, con frente a la costa o playas de Puerto Rico, se requerirá que se dedique, para uso público, una faja de terreno de veinte (20) metros de ancho mínimo, paralela y medida desde la zona marítimo terrestre. Tampoco se erigirán estructuras permanentes en una faja de terreno de treinta (30) metros de ancho, contiguas a la anterior.

b. Delimitación de la Zona Marítimo Terrestre:

1. Se dispone que todo proyecto para la lotificación, urbanización y desarrollo de terrenos, así como para la construcción, alteración, ampliación y usos de estructuras o edificios en terrenos colindantes con el litoral, será necesario que se someta junto con los otros documentos y requisitos, el plano de deslinde de la zona marítimo terrestre, certificado por el DRNA.

2. **Esta certificación no se entenderá que concede derechos de propiedad permanentes, ya que lo que representa es el límite de la zona marítimo terrestre a la fecha del plano, el cual**

**podría variar cuando la naturaleza altere el contorno natural de la costa.** (Énfasis nuestro).

3. La vigencia de los deslindes certificados por el DRNA será de cinco (5) años.

4. Cuando por causas naturales o alteración humana, se provoque un cambio en la costa, se podrá requerir un deslinde nuevo en cualquier momento antes del término de cinco (5) años.

...

e. Carácter Natural: Las obras de desarrollo de terrenos que se autoricen y que sean colindantes con costas y playas retendrán el carácter natural de la vegetación, rasgos topográficos, formas de las costas y un balance positivo para el ambiente natural sobre el desarrollo, excepto donde se desee proveer acceso y la vegetación, por ser muy tupida, lo impida.

f. Intensidad del Desarrollo: A los fines de proteger el gran potencial de los terrenos no urbanos de la zona costanera, especialmente de los terrenos que colindan con la zona marítimo terrestre, para la recreación, contemplación y solaz espiritual, se deberá evitar al máximo posible el desarrollo interno paralelo a la costa, promoviéndose y estimulándose el que esos terrenos se mantengan en su estado natural y que los usos que allí se ubiquen armonicen con el potencial del sector costanero.

Véase, págs. 476-479 del Reglamento Conjunto 2020.

Por su parte, la Sección 6.4.2.3(c) dispone lo siguiente en torno a la Línea de Solares con Frente a la Costa:

Cuando el proyecto envuelva la creación de una línea de solares individuales paralelos y contiguos con la zona marítimo terrestre o litoral lacustre, los mismos estarán separados de la Zona de Separación de veinte (20) metros de ancho mínimo por una calle pública que servirá de acceso principal a los mismos.

Véase, pág. 480 del Reglamento Conjunto 2020.

La Sección 6.4.2.8 dispone lo siguiente:

RETIRO DE EDIFICIOS O ESTRUCTURAS DEL LÍMITE MARÍTIMO TERRESTRE Y ESTUDIO DE SOMBRAS

a. Disposición General:

1. Con el propósito de evitar que las sombras que producen algunos edificios en la costa y las playas de Puerto Rico dificulten el uso óptimo de éstas, toda edificación a erigirse, construirse, trasladarse o ampliarse dentro de una distancia de cuatrocientos (400) metros del límite de la zona marítimo terrestre según lo determine el DRNA, observará un retiro mínimo, medido horizontalmente desde su base o pared más próxima a la Zona Marítimo Terrestre hasta dicho límite, de dos y media (2.5) veces su altura y cuya

medida se hará desde el nivel del terreno en tal base o pared.

2. **Este retiro no será menor que el retiro de cincuenta (50) metros establecido mediante la Sección 6.4.2.2 en esta Regla.** (Énfasis nuestro).

b. Exenciones: Para las zonas urbanas y como alternativa de cumplir totalmente con la anterior disposición general la Junta Adjudicativa o la JP podrá eximir parcialmente del cumplimiento de la misma en los siguientes casos:

1. Cuando se trate de un solar, cuya formación y calificación urbana fueron autorizadas por la JP con anterioridad a la fecha de vigencia de este Reglamento y para el cual el retiro requerido no permita su utilización de acuerdo con lo permitido por la zonificación del sector.

Véase, pág. 485 del Reglamento Conjunto 2020.

Toda solicitud para una concesión será acompañada de estudios de sombra donde se demuestre que el área dentro de la zona marítimo no recibirá sombra por más de una (1) hora en cualquier día del año durante las horas de diez (10:00) de la mañana a cuatro (4:00) de la tarde. Sección 6.4.2.10, pág. 486 del Reglamento Conjunto 2020

En cuanto a la calificación del distrito, el Distrito Residencial Comercial (R-C) es de uso combinado porque se permiten los usos residenciales y comerciales. No obstante, el uso principal será residencial. Secciones 6.1.5.1 y 6.1.5.2 (a) del Reglamento Conjunto 2020. La cabida mínima en las áreas urbanas de alta densidad es cuatrocientos (400) metros cuadrados y en los centros urbanos tradicionales la existente. El ancho mínimo del solar en las áreas urbanas de alta densidad es veinte (20) metros y en los centros urbanos tradicionales el existente. El patio delantero tiene que cumplir con lo que fuera mayor entre tres (3) metros de fondo o una quinta (1/5) parte de la altura del edificio. Sin embargo, en los centros urbanos tradicionales, se requerirá un patio delantero con un fondo no menor de un (1) metro o de una quinta (1/5) parte de la altura del edificio. Se exime de estos parámetros a los edificios donde los colindantes no tienen patio delantero. El patio posterior

tiene que cumplir con lo que fuera mayor entre un fondo no menor de cuatro (4) metros ni menor de una quinta (1/5) parte de la altura el edificio. Los centros urbanos tradicionales tienen que tener un patio posterior con un fondo no menor de tres (3) metros o de una quinta parte (1/5) de la altura del edificio cual fuera mayor. Sección 6.1.5.5 PARÁMETROS DE DISEÑO.

**III.**

El recurrente alega que la División de Remedios Administrativos erró al concluir que la OGPe denegó correctamente la consulta de construcción. El error señalado es un ataque a la apreciación de la prueba del foro administrativo. El recurrente sostiene que la decisión constituye una incautación indebida de su propiedad.

La Oficina de Gerencia de Permisos no cometió el error señalado. El recurrente no derrotó la deferencia que merece su denegatoria a la consulta de construcción y las variaciones que solicitó. La determinación de la agencia está basada en la evidencia sustancial que consta en el expediente administrativo y que no fue controvertida por la recurrente. La Oficina de Permisos interpretó y aplicó correctamente las disposiciones del Reglamento Conjunto del 2020, que regulan las consultas de construcción y las variaciones y las que protegen las costas y recursos naturales. Así lo sostiene la evaluación del expediente en su totalidad.

La propiedad en controversia ubica en una zonificación residencial comercial. El uso residencial es permitido de forma ministerial. El recurrente solicitó una variación en el patio delantero. El Reglamento Conjunto exige que el patio delantero tenga tres (3) metros y el propuesto es de un (1) metro. La propiedad se encuentra en la zona costanera. Por esa razón, está sujeta al cumplimiento de las disposiciones que garantizan la protección de

la zona marítimo terrestre y el acceso a las playas y costas de Puerto Rico.

La variación que solicita el recurrente viola el Reglamento Conjunto 2020, porque la construcción propuesta no cumple con la separación de treinta (30) metros de la zona marítimo terrestre. El recurrente pretende reducir esa distancia a veinte (20) metros que, sumados a los cuatro (4) metros del patio delantero, serían unos veinticuatro (24) metros. La construcción tampoco cumple con la faja de veinte (20) metros que tiene que estar disponible para el uso público. La agencia utilizó como fundamentos, los planos y el deslinde de la zona marítimo terrestre. El documento preparado por el Departamento de Recursos Naturales y Ambientales, no tiene constancia de que la agencia consideró la construcción propuesta. Por el contrario, aclara que no se autoriza ningún movimiento de tierra. Además, según consta en ese documento, la propiedad está a nombre de otras personas que no son el recurrente. Véase, pág. 70 del apéndice del recurso.

> 11. Deberá cumplir con la sección 6.4.2.2 del Reglamento Conjunto para la Evaluación y Expedición de los Permisos Relacionados al Desarrollo, Uso de Terrenos y Operación de Negocios del 2 de diciembre de 2020. Zona de Separación: Todo proyecto para la construcción de edificios, de segregación o de urbanización de terrenos, con frente a la costa o playas de Puerto Rico, se requerirá que se dedique, para uso público, una faja de terreno de veinte (20) metros de ancho mínimo, paralela y medida desde la zona marítimo terrestre. Tampoco se erigirán estructuras permanentes en una faja de terreno de treinta (30) metros de anchos contiguas a lo anterior.

Íd.

> 11. Si como consecuencia del deslinde pendiente de certificación resulta que el proyecto deba ser modificado o reconfigurado para cumplir con la Zona Marítimo Terrestre o por cualquier otro motivo requiera tal modificación o reconfiguración, deberá presentar una Pre Consulta ante la Oficina de Gerencia de Permisos para determinar si la variación propuesta constituye o no una variación sustancial.

Véase, pág. 71 del apéndice del recurso.

Según consta en la resolución recurrida, el ingeniero Bassat Rivera fue testigo del recurrente. Durante su testimonio reconoció que el patio posterior propuesto está dentro de los 30 metros de la zona marítimo terrestre. Por su parte, el interventor Jaime Barea Fernández declaró que se oponía al proyecto porque el recurrente estaba construyendo un muro en la zona marítimo terrestre que tendría un efecto negativo para las tortugas marinas. El interventor también se opuso al deslinde porque se realizó en el año 2019 y el área ha cambiado. Por último, declaró que la Junta de Planificación ordenó al colindante del recurrente que destruyera un muro por daño a la playa. El foro recurrido dio por hecho que la recurrente pretende construir un muro de hormigón de tres (3) pies con una verja decorativa, que invade el área reservada a uso público.

La Oficina de Gerencia de Permisos hizo constar que el ingeniero Bassat Rivera declaró lo siguiente. La separación de 20 metros requerida para uso público es contigua a los 30 metros reservados de la zona marítimo terrestre. Según el testigo, eso no significa que la construcción tenga que estar a cincuenta (50) metros de la costa. No obstante, el foro administrativo rechazó su conclusión. La agencia determinó que la construcción tenía que estar a unos cincuenta (50) metros de la costa, para salvaguardar los treinta (30) metros de la zona marítimo terrestre y los veinte (20) metros de acceso público a la playa.

La agencia interpretó correctamente el Reglamento que le corresponde poner en vigor. La Sección 6.4.2.2 del Reglamento Conjunto del 2020 establece que los veinte (20) pies dedicados a uso público se miden paralelamente <u>desde la zona marítimo terrestre</u>. A nuestro juicio, eso significa que la franja de uso público comienza donde termina la zona marítimo terrestre.

El recurrente no presentó una transcripción o una exposición narrativa de la vista administrativa que nos permita pasar juicio

sobre la apreciación de la prueba que hizo la Oficina de Gerencia de Permisos. La falta de una transcripción o de una exposición narrativa, nos impide intervenir con su adjudicación de credibilidad, porque no tenemos forma de evaluar los testimonios presentados. *Graciani Rodríguez v. Garaje Isla Verde, supra.* Conforme la evidencia documental que surge de la totalidad del expediente, el recurrente no cumplió con los requisitos de la Sección 6.3.2.4, *supra.* La prueba presentada y no controvertida por el recurrente, convenció a la Oficina de Gerencia de Permisos de que el recurrente no probó que la variación era necesaria para la preservación y el disfrute de su derecho propietario y que aliviará un prejuicio claramente demostrable. Según la agencia, el recurrente tampoco evidenció que la construcción no afectará adversamente el disfrute y valor de las pertenencias cercanas en el uso presente y para cualquier otro uso futuro permitido. Además, de que no demostró que la construcción no ocasionará peligro a los recursos naturales.

La parte recurrente no demostró que en el expediente administrativo existe prueba que derrota la evidencia sustancial en la que se fundamenta la resolución recurrida. Igualmente falló en establecer que la Oficina de Gerencia de Permisos erró al aplicar la ley o que actuó arbitraria, irrazonable o ilegalmente. Por el contrario, el foro administrativo ejerció de forma razonable su discreción para autorizar una consulta de construcción. La decisión recurrida es más que razonable, porque está basada en la política pública que cobija las costas y el acceso a las playas de Puerto Rico. La construcción propuesta atenta contra esa política.

**IV.**

Por los fundamentos antes expuestos, se confirma la resolución recurrida.

Lo acordó el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones